The next matter, number 23-1094 and number 23-1104, Jonathan Mullane v. United States Department of Justice et al. At this time, would counsel for the appellant Mullane please introduce himself on the record to begin. Good morning, your honors. I may please the court. I'm Thomas Burns and I represent Jonathan Mullane. I'd like to reserve three minutes, please. You may. Congress never gave agencies unilateral power to redefine searches, truncate timelines, or exclude record repositories to minimize responsive documents. Instead, it required agencies to make reasonable efforts to search for requested records. We recently asked the Department to search office-wide and personal record repositories including calls, voicemails, texts, e-mails, and calendar entries for a limited universe of search categories or interpersonal connections between certain personnel in the U.S. Attorney's Office during a 10-month time frame. And instead of performing that requested search, the Department redefined it by deleting categories, truncating the time frame to four months, and excluding record repositories to reduce the number of potentially responsive documents. That wasn't reasonable and it was error to hold otherwise. The District Court further erred when it held it lacked jurisdiction over the Privacy Act claims absent administrative exhaustion. But that defends a mere claims processing rule, not a jurisdictional bar, which the Department forfeited at summary judgment by not advancing. Counsel, as to the Privacy Act, even as I understand your argument, if it's not jurisdictional, it's merely a claims processing rule, it's still discretionary with the court as to whether the agency, whether the failure to exhaust nonetheless means the agency was deprived of the opportunity and therefore you have no remedy. So the government argues something like that. It also argues that the privacy issue is moot because they have turned over all of the documents. As I read your reply, it sort of says, don't trust the government. And I can understand why, given your experience, that that may be your point of view. But how does that then entitle you to relief under the Privacy Act? So the two hurdles you mentioned there, and let me see if I can jump over them. The first is whether it's discretionary with the District Court or it has to be presented by the party. I understand the rule as not being that the district judge can raise it sua sponte, but rather that it has to be raised as a defense by the party, both because it's an affirmative defense and because of, in the court that I practice for most often, what they call the party presentation principle. I'm not sure that the First Circuit has used that term before, but I understand this defense is something that the department must raise, both in its answer, which it did, and in its summary judgment papers, which it did not. And so I understand that issue as forfeited and not something that the District Court could properly raise. The second hurdle you mentioned is essentially like, what's the difference? What else could you get under the Privacy Act? And here's where I think there could be a difference. They say they've reviewed everything, we've produced everything, but the exemption analysis would be different under the Privacy Act than it would be under the Freedom of Information Act. And so I think that the exemptions could have been handled differently as a result of that. So that's why this issue about the Privacy Act, we still consider to be a live dispute in the case. If that answers your question, Judge Lynch. Could you be a little more specific about the exemption point you just made? Right, so the fact that something is exempted under FOIA doesn't mean that it's exempted under the Privacy Act and vice versa. Yes, but specifically, what are you arguing? What I'd argue was that more general point, Your Honor. I hadn't linked it up together. Okay, they're not coterminous, that's your argument. Exactly. And if you would agree with me, you would vacate the judgment and ask the District Court to perform that analysis in the first place, which the District Judge hasn't yet done. Okay, thank you. Okay, you're welcome. Do you know what exemptions they've invoked under FOIA that are not exemptions under the Privacy Act? I do have that somewhere, but I don't have that presently, Your Honor. Do you know, is there, so you're not able to tell us now whether there's a particular exemption for which there are likely to be documents that you have not received because they've invoked that exemption and that exemption is not recognized under the Privacy Act. That would be the line of thinking. That would be, Your Honor, and the relief I was asking for is to send that back to the District Court to have it figured out then. I do have that prepared somewhere, just not today, and it's not something I wanted to ask you to do in the first instance, so I was going to ask the District Court to do that if you agreed with me on the Privacy Act jurisdictional analysis and forfeiture analysis. The bigger dispute, I think, has to do with the Freedom of Information Act, and here what we're really focused on is the declarations of the agency declarations. Can you specifically discuss your argument about the file structure and with the thought of answering these two questions? Even if you're correct that the affidavit didn't describe the file structure, does that make the government's search per se unreasonable? And then secondly, it doesn't look like that argument was made or raised by Mr. Mulaney, so it may be waived. Well, let's talk about both of those things. So do you want to talk about the waiver part first? Well, I'm going to talk about the waiver part first because that was one of the things that I thought was most interesting in the reply brief. So he does make a passing reference to the argument at page 212 of the appendix. It's nine words, and he cites the rule and quotes a case saying you have to describe the general file structure. The District Court also says that this is an additional thing that could be required. I understand that is a mandatory requirement, that the agency affidavit must do that, and if the agency affidavit doesn't do that, then the burden never shifts to the requester to prove that the search was done in bad faith. It's just like the affidavit's inadequate, and what the District Court should have done is said, your affidavit's inadequate, here's why, please submit another affidavit, and then I'll rule on the papers at that point. So we regard it as a mandatory requirement. So it could be that he preserved it in the nine words in that paper. If he didn't, then we've got a really interesting question of appellate procedure, in particular how this court handles the raise or waive rule. Now, the other courts have said, well, if you present the general issue, that's enough, and you can present a more beefed up argument in the appeal, and that's good enough, and we'll consider it. This court doesn't seem to apply that rule, at least in the cases that I've seen. They say, or you say, the court says, if the specific argument's not raised below, then that is barred by the raise or waive rule unless we apply a discretionary exception, which we could do essentially in the interest of justice. I would like to argue to you that the rule should be it's not a discretionary point on your part. If a general argument's raised below, more specific arguments raised on appeal, then the rule ought to be that's preserved. So are you saying that if the party below simply says your proof is inadequate to shift the burden, period, that preserves any and all arguments for why the item is deficient? Your sister circuits have appeared to adopt such rule, and the Supreme Court has appeared to adopt such a rule. Well, the Supreme Court does. It's a whole special case there because of the cert process. Exactly. I understand that, and some of the courts have mentioned that as well. Just to take one example, the Eleventh Circuit has said, well, there's a difference between issues and positions on one hand and arguments on the other. Arguments don't have to be preserved, but the issue or position does, and then there's a gray area between what's an issue position on one hand and an argument on the other. Here, what we were saying, the general argument is like your search is inadequate. Here are some reasons why your search was inadequate, and then we cite in passing nine words, you have to describe the general file structure. And in our view, that should be sufficient to either preserve the issue automatically or at least trigger you to apply discretionary exceptional allowance. So you go to the judge and you say that proof is inadequate, and the judge says, how? And you say, you've got to figure it out on your own, judge, because I've now preserved all arguments for appeal, and I've got one really good one that I know they'll flip you on if you don't rule my way in the case. What happens then? I, of course, wouldn't do that, Your Honor, but if that happened, then you'd hopefully be in a position where if the appellate court sees that an obvious error was made, that you can correct it. And that's what we're arguing here. There is an obvious error that was made because we didn't get the general file structure in the first place, which prevented us from making really informed motions about what discovery would have turned up. So if you look at one of the documents in the record, it's document 71.1, pages 40 to 45. That's where the litigation hold memoranda are. And they all describe, well, the office is using Microsoft Outlook. They have VOIP or VOIP telephone protocols. And to me that says, well, you know, they've produced some stuff that indicates that they can do text searches of, you know, centralized text searches pretty easily. I can do that with my law firm. Why couldn't the Department of Justice do that with this, you know, massive office in Miami? And if they'd said that in their affidavit, we would have been able to pursue that more deeply, I think, in the litigation. Can't we take into consideration, too, the fact you're talking about an intern who was there in the office for 10 months? There's no reason to think there'd be much. Right. It was actually four months, not even 10 months. But he was asking for a 10-month frame, and there's kind of a tension in the department's response where it's like, there's too much stuff, but also there's too little stuff. Like, you know, we couldn't possibly be expected to look for all this stuff. But he's like, he's only there for a couple of months, so why couldn't they do these text searches, say, like, here's all the things that it produced? And then if there was, like, some question about, like, oh, we've got 10,000 documents to review, then there should be some kind of discussion with the requester, like, hey, there's too much stuff here. Let's agree on how we're going to narrow this. And an example of that is the District of Columbia District Court in Bagwell against Department of Justice. That's the Penn State case. And there the district court said, look, you can't use these terms in this way. You can use the terms in a more – you should use broader terms. And to the extent that you guys have anything that you need to work out, go work it out, and then I'll rule on that. I'm out of time if you have any further questions. You've reserved three minutes, I believe. Yes. Thank you. Thank you, Counsel. At this time, if the Counsel for the United States would please introduce himself on the record to begin. Good morning, Your Honors. My name is Michael Sadie. I'm here on behalf of the appellees. Excuse me. Actually, I'd like to follow up on a couple of points raised by this court, first by Judge Lynch, with regard to the Privacy Act claim. There were no exemptions applied to the Privacy Act documents that were produced. That's in the declarations. You mean the FOIA documents? The Privacy Act documents. The ones that were responsive that were found in a Privacy Act system of records. The government did not apply any exemptions. They released the Privacy Act records in full to the plaintiff without any redactions. If you look at the declaration of Justin Wilkinson, he says there were no exemptions that they applied. So the government didn't withhold any Privacy Act documents under J2? Correct. That's correct. And based on the law, this matter would be moved. And it's cited in our brief case of Lovell. There is actually additional case law that I did not cite and that I can, through a 28-F, through a 28-F filing, but there's the same law is applied of mootness by, in the Tenth Circuit, in the Jackson v. Senseski case, in the Ninth Circuit, in the Yonemoto v. V.A. case, in Crummey v. S.S.A., which is a D.C. Circuit case. All cases state that once the government has produced all Privacy Act records, the matter is moot and there's no further claim under the Privacy Act. And that really is what's happened. Forgive me, but isn't the way this reacts is that you produce certain documents, the other side says it's not an adequate production under the Privacy Act, and the court then says, I've got no jurisdiction over the Privacy Act claim? That's what the district court judge did. So we don't have, because the court said that it didn't have jurisdiction, we don't have any benefit of any review or finding by the district court that your production was otherwise adequate under the Privacy Act? That's correct, Your Honor, except for the fact that you do have the declarations that state that all Privacy Act documents are produced and you do also have the authority to affirm a district court's judgment based on grounds not cited by the district court if the facts support that decision. So you want us to look at the request made for documents, the affidavit, and then make a ruling in the first instance that the production was adequate? Under FOIA? Is that what you're saying, Your Honor? No, under the Privacy Act. Under the Privacy Act? Well, the request was very straightforward. Give me an end in all records in your possession regarding me and my employment as to my employment within the U.S. Attorney's Office in Florida and personnel records. So it was very straightforward. So what was the challenge on Privacy Act grounds? Well, this is a very different challenge. It was below, Your Honor. During the opposition and during the hearing on the Privacy Act claim, the appellant here was claiming that, following up on my brother's comment, that there are exemptions that are applied to FOIA and exemptions that are applied to the Privacy Act and where they both overlap. However, some of the exemptions that were applied to documents that were FOIA exemptions but were not covered by the Privacy Act, then you must remove that exemption and produce the document. But the problem with that argument down below was the appellant never focused on the system of records. His argument was that any record that contains my name, including e-mails, because it contains my name, is a Privacy Act record. And that's not the case. That's not the law. The Privacy Act is subject to a system of records, which is an identifier in a file, basically, with your name on it. And that's what the U.S. Attorney's Office in Florida did, is went to the Human Resources Department and got his personnel file, because that is really the only system of record that would have been in play here for purposes of Privacy Act records. They got the Privacy Act records, his personnel file, produced everything in full without placing any exemption on any information in those Privacy Act records. So with regard to the reasonableness, I'd like to bring up the most recent argument that was in the reply brief. That is the first time we've seen this argument. That was never raised. And it could have been raised. There's two levels of waiver here the government believes are in play. The first is this whole issue of whether this court should apply the very narrow and rare hen's teeth exceptions to this argument that is newly made, which I believe is a new position, not an argument, it's a new position, should be utilized. It was never made in the opening brief. The appellant notes in his brief that this is the first time it's ever been raised. I'm now hearing that he used nine words, that in fact it may have been raised down below, but certainly it was never argued in any detail down below. But anyway, in any event, he's saying that this has never been raised, and clearly in the opening brief, knowing that there's an elephant in the room here, and that is this court's longstanding precedent that you can't raise arguments that you didn't raise below just because you raised the general issue below. Never addressed in the opening brief. It only comes to light in 19 pages in the reply brief. So the government submits that there's waiver, even as to that argument, for that very reason. But then there's waiver in general. This court has a longstanding precedent of not permitting parties to fill in the blanks, and I think that was what you were saying, Judge Callada, is that can you just raise an issue generally and then come up into the appeals court and fill in the blanks that you never gave to the district court? That's just not how it works. And that's the law of the circuit. The appellant wants you to use this narrow and rare exceptions, and that is the controlling authority of the U.S. Supreme Court, ye and his progeny, or not controlling authority that would apply to the first exemption. And the section exemption is whether there's good reason based on ye and his progeny that this court would look and overturn prior panel decisions in this case. That's just not here, Your Honor. This court has, and he even wrenches it in his brief, this court has looked at LeBron in Romano and rejected LeBron. This court recently, in a case called Mondal v. Arcadia, the dissenting opinion of Judge Barron mentions ye in response to the court determining that the argument in that case was waived. And the court looked at his dissent and said, No, we're not going to depart. There's no good reason to depart from our longstanding precedent. And there's no good reason to depart here in particular. This is a garden-variety FOIA claim case where there's a challenge to the adequacy of the search. The appellant has had five bites at the apple on the adequacy argument. He had his opposition, he had his hearing, he had his motion for reconsideration, he had his motion to vacate judgment, he had a supplemental motion to vacate judgment. This argument never has ever appeared. This truly is a poster child of why this court should stick to its steadfast adherence to the law of this circuit. As with, there's some additional new arguments raised. The appellant argues that the declarations are insufficient because they contain hearsay. If you look at Maynard, Maynard says declarations from official authorities will have second-hand information. It's not hearsay. Also, with regard to getting back to adequacy of search in Maynard, Maynard doesn't say that if you do not include a description of the structure of the file system, that a search is per se inadequate. It doesn't say that. It said it should generally describe in the affidavit the structure of the files. Should the further search be difficult? We don't have this here. The U.S. Attorney's Office in Florida gets this request regarding a part-time intern who was there for 12 weeks who was assigned to one unit. They send out an office-wide e-mail asking for any and all records regarding Jonathan Mullane, all in boldface. We all know who we're dealing with here. Sends out a second targeted request to the people, individuals, that they believe would have some contact with him, and that is the internship program, AUSA, the asset forfeiture unit, which only had, I think, five attorneys at the time, and human resources. They got all the records. They get a response saying the only information we would have is e-mails. So under Maynard, by not stating a description of Outlook and how Outlook is used for purposes of gathering e-mail, renders this search unreasonable. Let's switch gears for a second. I understand your position that the estoppel, Mr. Mullane's estoppel-based argument against administrative exhaustion would have only applied to his request for expedited processing and fee waiver, but I didn't see any citations, any authority for that premise in your briefs, and I'm wondering if you have them. It does look to me like Mr. Mullane raised that estoppel argument below. What we do have, Your Honor, in the brief is, I didn't cite anything, Your Honor. You're absolutely right. I'd have to look back at that. I don't believe I have cited that. I guess the issue is whether there's authority for holding that Mr. Mullane would still be required to administratively exhaust all claims, even if he didn't receive notice of how to appeal those claims. But in this case, Your Honor, he did receive notice. He received notice from, the search was conducted by, basically I would say two components. The first search was looking for records in Washington, D.C. regarding his employment at the Department of Justice. He got a response of no records. And in that response of a letter it says you can appeal that determination. That was not appealed. And then the second component of that search was the component where it was sent. The search was sent down to the Southern District of Florida. And prior to getting any response from the government, he filed suit. And it would be the government's argument that you can't implement constructive exhaustion in those cases. But not in this type of situation under the Privacy Act. Are there any further questions? Thank you. Thank you, counsel. At this time, if counsel for the appellant would please reintroduce himself on the record. He has a three-minute rebuttal. Good morning again. Thomas Burns for Jonathan Mullane. There are two different types of razor wave rule applications. One has to do with preservation below and the other has to do with raising the argument in the opening brief. I think my colleague misspoke when he said that I didn't raise this argument about the general file structure in my opening brief in this court. I did. It's at pages 19 through 22 of the brief. There is a question that you're going to have to decide whether it was preserved in the court below. I'd ask you to look at page 212 of the appendix, decide whether those nine words preserved it. If it didn't, determine whether you have any appetite to reevaluate how you wish to apply the razor wave rule in this court. If you don't have that appetite, decide whether this falls within an exception, and then that will be how you handle the issue about the general file structure. In addition to the general file structure, we've argued about not rewriting the terms of the search and not truncating the timeline. Look at the two different requests. There's an October 12 request and an October 14 request. The October 12 request doesn't ask for documents pertaining to Jonathan Mullane. It actually asks for eight categories of documents and then it says it's documents with this word or that word. So that's actually the search that's being requested. They're not stuck with your client's choice of words to search? Well, this is an interesting thing to me. I'm not sure if they are or not because he's not said, I want this and you guys figure it out and then we'll agree on what the terms are. He's asked for these categories of documents. You're not supposed to look beyond the four corners of the request. From the request, all we know is he could just be really interested in the intern program in the Southern District of Florida to see if there's waste there happening. So it could be that, yes, he is in fact looking for those 5,000 pages of documents or 10,000 pages of documents. And I think that you're just supposed to look at the request and then see if they've complied with it and performed an adequate search. The second request on top... I thought the agency retained some discretion as to the means and methods of conducting the search. There is some, and I've not seen a case that really explains the extent to which that happens. So the Bagwell case is the closest one I've seen, but it doesn't really say this is what the request was. It describes the request in more general terms. And what's unique about the October 12 request is it's not in general terms. It's I want these eight categories of documents. So I'm not sure the extent to which the agency would have to rewrite that request. It could be none. It could be some. I just haven't seen a satisfying answer from the case law for me. And on the file structure, what do you say to the argument we just heard? They looked at the request. They found out anything we'd had would be in the emails. And so they searched their emails. Why should they have to describe the file structure of Outlook or whatever? I think it mostly has to do with the way we would be able to ask for limited discovery of these responses. So, like, they've done the search in a way that seems backwards and inefficient to me, where they just asked people and then said, okay, it's going to be these couple of things. It would have made more sense to me to do a centralized search, say, like, okay, well, here's where these words pop up, and then reach out to those people and say, like, hey, like, this name popped up in your email. Did you have any contact with this guy? And then that prosecutor might say no. And then they say, okay, well, we're not going to search that guy's emails. But instead they did the process, in my view, backwards, and then they just gave, like, a less complete production of documents than I think they were required to. And had they given a general description of the file structure, we could have said, like, well, we want now, like, you know, you're speculating when you say there's, like, you know, going to be a zillion hits. What do you mean? Did you actually put in those search terms? Tell us more so we can actually get, like, a satisfying answer to whether you've performed an adequate search. So I think that's really where it would have made a difference. It would have allowed us to prepare a better motion on whether we should get additional discovery. I'm happy to answer any further questions. If not, then we're just asking you to vacate the judgment and remand to the district court for further proceedings. Thank you. Thank you. Thank you, counsel. That concludes argument in this case.